**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| MARGARET J. LOEWEN, M.D. | ) | **Civil Action No. 1:10-cv-1284** |
| | ) | |
| Plaintiff, | ) | **Gordon J. Quist** |
| | ) | **U.S. District Judge** |
| vs. | ) | |
| | ) | |
| GRAND RAPIDS MEDICAL | ) | **JURY TRIAL DEMANDED** |
| EDUCATION PARTNERS, a corporation, | ) | |
| SPECTRUM HEALTH SYSTEM, a | ) | |
| corporation, TRINITY HEALTH | ) | |
| CORPORATION, a corporation t/d/b/a | ) | |
| SAINT MARY'S HEALTH CARE, | ) | |
| MICHIGAN STATE UNIVERSITY, a | ) | |
| corporation, MARC SCHLATTER, | ) | |
| an individual, and JOHN vanSCHAGEN, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | **Filed Electronically** |

**FIRST AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, Margaret J. Loewen, through undersigned counsel, and files this Complaint for remedies and damages under federal and state law.

**I. INTRODUCTION**

1.      Plaintiff brings this action to secure legal and equitable relief for discrimination on the basis of her gender under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e et seq., Title IX of the Education Amendments of 1972 (hereinafter "Title IX"), 20 U.S.C. § 1681 et seq., and the Michigan Elliot-Larsen Civil Rights Act, (hereinafter "ELCRA"), MICH. COMP. LAWS. § 37.2101 et seq, on the basis of her age under the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 621 et seq., and the ELCRA, and for retaliation under Title IX, the ADEA, and the ELCRA.  Plaintiff also brings various state common law claims including breach of contract.

## II.  PARTIES

2.      Plaintiff Margaret J. Loewen, M.D. (hereinafter "Plaintiff" or "Dr. Loewen") is an adult individual who was formerly a graduate medical resident residing in Grand Rapids, Michigan.

3.      Defendant Grand Rapids Medical Education Partners (formerly known as "Grand Rapids Medical Education and Research Center" ("GRMERC") and hereinafter "GRMEP") is a Michigan non-profit corporation with its place of business at 1000 Monroe Avenue N.W., Grand Rapids Michigan, 49503.  GRMEP is a consortium of medical and educational institutions that operates graduate medical residency programs in Grand Rapids, Michigan.

4.      Defendant Spectrum Health System (hereinafter "Spectrum") is a Michigan non-profit corporation with its place of business at 100 Michigan Street N.E., Grand Rapids, Michigan 49503. Spectrum operates a constituent hospital of GRMEP where Plaintiff performed part of her residency.

5.      Defendant Trinity Health Corporation is an Indiana non-profit corporation that trades and does business in the State of Michigan as "St. Mary's Health Care" (hereinafter "St. Mary's") with its place of business at 200 Jefferson Street S.E., Grand Rapids, Michigan 49503.  St. Mary's operates a constituent hospital of GRMEP where Plaintiff performed part of her residency.

6.      Defendant Michigan State University (hereinafter "MSU") is a public university funded by the State of Michigan with its place of business at 494 Administration Building, East Lansing, Michigan 48824-1046.  MSU is a partner and/or affiliated with GRMEP.

7.      Defendant Marc Schlatter, M.D. (hereinafter "Dr. Schlatter") is an employee of Defendant GRMEP and has his business address at 1000 Monroe Avenue N.W., Grand Rapids, Michigan 49503.  He is being sued in his individual and his official capacity.

8.      Defendant John vanSchagen, M.D. (hereinafter "Dr. vanSchagen") is an employee

2

of Defendant GRMEP and has his business address at 1000 Monroe Avenue N.W., Grand Rapids,

Michigan 49503.  He is being sued in his individual and his official capacity.

### III.  JURISDICTION

9.      Jurisdiction of this Court over the matters in this Complaint is founded upon 28

U.S.C. § 1331, 28 U.S.C. § 1367(a), and on 42 U.S.C. § 2000e-5(f)(3).

### IV.  VENUE

10.     The events related in this Complaint occurred in Grand Rapids, Kent County,

Michigan, in the Western District of Michigan; therefore, venue is proper in this Court.

### V.  ADMINISTRATIVE EXHAUSTION

11.     Dr. Loewen filed administrative complaints with both the U.S. Equal Employment

Opportunity Commission (hereinafter "EEOC"), reference number 471-2010-02233, and with the

Michigan Department of Civil Rights (hereinafter "MDCR"), reference number 413680, related to

discrimination on the basis of gender, age, disability, and for harassment and violation(s) of the

Equal Pay Act.

12.     On or about August 6, 2010, Dr. Loewen amended her administrative complaint to

include an additional charge of retaliation.

13.     On or about January 10, 2011, the EEOC issued a Right to Sue Letter related to Dr.

Loewen's administrative claims for discrimination on the basis of gender, age, disability, and for

harassment and violation(s) of the Equal Pay Act.

14.     On or about January 24, 2011, the EEOC issued a Right to Sue Letter related to Dr.

Loewen's administrative claims for retaliation.

## VI.  STATEMENT OF FACTS

15.     Dr. Loewen is female and was born on July 11, 1954; presently she is fifty-six (56) years old.

16.     While in her forties, Dr. Loewen decided to follow her life-long dream of becoming a physician.

17.     She completed the necessary pre-medical course load at Goshen College.

18.     She completed medical school at Indiana University.

19.     In medical school, Dr. Loewen performed well, especially during her clinical rotations in surgery which was her academic passion and career goal, and with the encouragement of the surgery faculty at Indiana University, she decided to pursue a residency program in general surgery.

20.     At the age of fifty (50), Dr. Loewen accepted a residency position in general surgery with GRMEP which, according to its website, "is a partnership between Saint Mary's Health Care, Spectrum Health, Grand Valley State University and Michigan State University."

21.     Dr. Loewen was by far the oldest resident in the program.

22.     From 2005 through 2008, Dr. Loewen successfully completed the first three (3) years of her five (5) year residency.

23.     However, during this period and in fact throughout her entire residency, Dr. Loewen was subjected to harassment, discrimination, and abuse.

24.     Dr. Loewen was subjected to unwanted sexist and ageist remarks from her superiors and colleagues.

25.     By way of example, during an operation assisted by Dr. Loewen, the attending

4

physician discussed with those in attendance that the residents had been speculating about Dr. Loewen's personal background, and they had reached the conclusion that Dr. Loewen probably had been "really wild" in her youth.  The attending physician said that he couldn't wait to see Dr. Loewen get roasted on graduation day, and that he was going to have others put together a composite portrait with Dr. Loewen's head superimposed on the body of a "bare-breasted native woman" for the event.

26.     Dr. Loewen was offended by the sexist and ageist remark and felt that the "native woman" phrase was a disrespectful reference to her childhood spent in Africa.

27.     While assisting Dr. Kemmeter – a bariatric surgeon and an Assistant Program Director – during an operation, Dr. Kemmeter discussed Dr. Loewen's prior career as a dietitian with her at length.  Dr. Kemmeter told Dr. Loewen that owning a nutritional counseling business was fine, and that Dr. Loewen should not have left that line of work to become a surgeon.

28.     Dr. Loewen understood Dr. Kemmeter's comments to mean that being a dietitian is more suitable for women than being a surgeon, and that Dr. Loewen should not have changed careers when she was as old as she was.

29.     Dr. David Figg, an attending physician and an Assistant Program Director, often and unnecessarily asked Dr. Loewen about being a mother and her previous career.  By all accounts, Dr. Figg had an old-fashioned attitude about female surgeons, and he treated them with condescension and sarcasm.

30.     Dr. Loewen understood Dr. Figg's line of questioning to reflect his chauvinistic attitude that younger males are better suited to become surgeons than older females like Dr. Loewen.

31.     Another surgeon and Associate Program Director – Dr. Stanley Sherman – bragged

5

during an operation assisted by Dr. Loewen in October 2009 that his daughter had told him that he was a male chauvinist pig.

32.    Attending physicians and fellow residents often asked Dr. Loewen how old she was. She usually dodged their questions by giving responses such as "that's classified information."

33.    Attending physicians and residents also indirectly inquired about Dr. Loewen's age by asking her questions like, "what music was popular in your era?," "how old are your children now?," or "how many years did you work before you started medical school?".

34.    The nurses at St. Mary's Health Center undermined the authority of the female surgical residents, including Dr. Loewen, and the attending physicians abided the nurses' insubordination.

35.    The male residents did not experience such noncompliance or insubordination by the nurses.

36.    During the residency, Dr. Loewen was not assigned to the same surgeries or teaching cases as her younger and/or male counterparts.  Dr. Loewen was assigned to the less desirable and less important surgeries and cases while younger and/or male residents were assigned to the more desirable and more important surgeries and cases.

37.    These assignments were made by the General Surgery Chief Residents, all of whom were male one year and by far the majority of whom were male every other year.

38.    Dr. Loewen received less material support than the younger and/or male residents.

39.    Dr. Loewen often was on-call without the assistance of an intern.  In contrast, the younger and/or male residents were on-call significantly less without the assistance of an intern.  The failure to provide Dr. Loewen with intern assistance caused her to have to do more work and to

6

become more fatigued than her younger and/or male colleagues.

40.     Dr. Loewen was assigned to and worked more hours than younger and/or male residents.

41.     Dr. Loewen was assigned an extra weekend of call duty during her colorectal surgery rotations in November 2007 and May 2008 when compared to the assignments of younger and/or male residents.

42.     In May 2008, after working a full shift, Dr. Loewen was told at 6:00 p.m. by Dr. Martin Luchtefeld – the Colorectal Surgery Rotation and Colorectal Fellowship Program Director – that she had to make a power point presentation on a topic of Dr. Lutchtefeld's choosing for the Colorectal Conference which was to begin at 7:00 a.m. the next morning.

43.     Dr. Loewen had to stay up the entire night conducting research and developing visual images.   The hours spent completing this task at the last minute went uncompensated and undocumented.  Following her presentation, Dr. Loewen completed a full day of work.

44.     Based on information and belief, the younger and/or male residents were not required to put together a presentation of this type on such short notice.

45.     Pursuant to the accreditation rules of the American Council of Graduate Medical Education ("ACGME") applicable to the institutional Defendants, no resident is permitted to work in excess of eighty (80) hours per week.

46.     At an information session conducted in 2005 prior to Dr. Loewen accepting a residency position, GRMEP disclosed that its medical residency program was or had been on probation with ACGME for certain violations, including excessive work hours required of residents.

47.     At the time, GRMEP assured the candidates including Dr. Loewen that these

7

deficiencies (i.e., excessive resident hours) would be corrected; this representation was critical to and relied on by Dr. Loewen in accepting her residency position because she still had a child at home.

48.     The Program Director for General Surgery Residency Program and Dr. Loewen's supervisor was Dr. Schlatter.

49.     Dr. Schlatter established Dr. Loewen's work schedule and academic goals.

50.     Dr. Schlatter had the obligation to protect residents enrolled in the program from demands that they work excessive (i.e., more than eighty (80)) hours.

51.     The GRMEP program nevertheless required its residents, including Dr. Loewen, to work in excess of eighty (80) hours per week in violation of applicable policies and Dr. Schlatter's obligation to prevent such work abuses.

52.     Dr. Loewen routinely was ordered to work excessive hours at home performing administrative tasks, but was told that these hours could not be recorded.

53.     In April 2009, Dr. Schlatter placed Dr. Loewen on a short term evaluation plan based on purported negative clinical evaluations and "poor" scores (meaning below 30%) on the American Board of Surgery In-Service Exam (hereinafter "ABSITE") for the last two years.

54.     Scoring above thirty percent (30%) on the ABSITE is not a condition of remaining in the Program.

55.     Dr. Loewen's relatively low ABSITE scores were due primarily to her health at the time of taking the exams.  For example, when she took the ABSITE in January 2008, Dr. Loewen was suffering from malaria which she had contracted while performing a recent international rotation in Africa.

56.     As part of this evaluation plan, Dr. Loewen was required to have a passing

8

performance on a mock oral board exam to be given on April 1, 2009 as well as a satisfactory performance on an internally developed multiple choice exam to be given at the end of April 2009.

57.    With respect oral examination, Dr. Schlatter told Dr. Loewen to focus on breast pathology and gastrointestinal bleeds as these subjects would cover approximately half of the questions.  Dr. Loewen heeded this advice and knew these subjects well but there were no questions about them on the exam and she did not do as well as she expected.  When Dr. Loewen asked Dr. Schlatter why there had been no questions about those subjects, he declined to comment.

58.    With respect to the multiple choice exam, Dr. Schlatter cancelled that exam at the last minute and without explanation.

59.    In May 2009, toward the end of Dr. Loewen's fourth year of residency, GRMEP decided that Dr. Loewen would be required to repeat her fourth year of residency as part of a remediation program.

60.    During this period, Dr. Loewen was not the only resident required to repeat the fourth year of residency due to low ABSITE scores.

61.    Male and younger residents Dr. Bradley Horak ("Dr. Horak") and Dr. Benjamin Rogoway ("Dr. Rogoway") also were required to repeat their fourth year residencies as part of a remediation program.

62.    Drs. Horak and Rogoway were treated more favorably than Dr. Loewen.

63.    Although Dr. Rogoway had scored below the thirtieth percentile (30%) for the second year in a row during his third year of residency, he was not required to repeat his third year in remediation.  Dr. Rogoway was required to repeat his fourth year of residency in remediation only after having scored below the thirty percentile (30%) for three straight years.

9

64.     Dr. Loewen carried a heavier workload than did Dr. Rogoway.  For example, during the period between May 2009 and November 2009, Dr. Loewen worked fourteen (14) nights without the assistance of an intern, while during the same period Dr. Rogoway worked only seven (7) nights without the assistance of an intern.  As a result, Dr. Loewen suffered greater fatigue than did Dr. Rogoway.

65.     Dr. Loewen was assigned more difficult rotations in critical care than either Dr. Horak or Dr. Rogoway.

66.     Dr. Horak was provided tutoring during his remediation period while Dr. Loewen was not.

67.     Favoritism toward Dr. Horak also was displayed when, after he had allowed his medical license to expire by not completing the U.S. Medical Licensing Exam, Step Three ("USMLE Step-3"), he was given leave from the program to get re-certified.

68.     Most importantly, unlike Dr. Loewen, Drs. Rogoway and Horak were permitted to complete their repeat fourth years in remediation and re-take the ABSITE.

69.     On November 19, 2009, Dr. Loewen was called to a meeting with Dr. Schlatter and Dr. Sherman.  Dr. Schlatter told Dr. Loewen that she was being dismissed from the general surgery program in the middle of her fourth year of residency.  When Dr. Loewen asked for reasons for the dismissal, Drs. Schlatter and Sherman were vague and referred to a purported concern for patient safety.

70.     Just a few weeks before this meeting, an attending physician asked Dr. Loewen about her age.

71.     When Dr. Loewen asked for specific examples regarding patient safety, Drs.

10

Schlatter and Sherman failed to provide any.

72.     Contrary to the general allegation, Dr. Loewen in no way was a threat to any patient nor did her performance jeopardize the health of any patient.

73.     Dr. Loewen was a safe and careful surgeon and, as a result, her patients did well and did not have problems with post-operative complications.

74.     Teaching surgeons and residents who supervised Dr. Loewen's work gave her good evaluations and she was trusted and respected by her patients and their families.

75.     In fact, in the Fall 2009 Dr. Loewen received even better evaluations than she had previously thereby demonstrating continuing improvement in her performance.

76.     Dr. Loewen never had been warned that her conduct endangered patient safety and she never had been charged with incompetence.

77.     Dr. Schlatter also claimed that there were concerns about Dr. Loewen's ability to make logical medical decisions in times of urgency.

78.     Again, when Dr. Loewen asked for specific examples, she was not given any.

79.     Contrary to Dr. Schlatter's claims, Dr. Loewen did not have an issue with making logical decisions in times of urgency.

80.     The Morbidity and Mortality reports for Dr. Loewen reflected that she prioritized and accomplished patient safety in administering treatment.

81.     At the end of the November 19th meeting, Dr. Loewen was told to pick up her medical gear and get out.

82.     The contract between Dr. Loewen and GRMEP signed in May 2009 (hereinafter "Resident Agreement") had a twelve month term from July 1, 2009 until June 30, 2010.

11

83.     Dr. Loewen was terminated just four months into her twelve month contract.

84.     Although to accomplish termination during the term of the contract the Resident Agreement specifically required GRMEP to provide Dr. Loewen with "written notice of termination," neither Dr. Schlatter nor Dr. Sherman provided any such written notice at the November 19th termination meeting in clear breach of the contract.

85.     The Resident Agreement also required GRMEP to pay Dr. Loewen her stipend and benefits through the date of termination, that is, when GRMEP accomplished termination by providing Dr. Loewen with written notice of termination.

86.     GRMEP did not provide Dr. Loewen with the required "written notice of termination" until March 2010 after she began the process of grieving her termination.

87.     Despite the fact that GRMEP did not provide written notice of termination until March 2010, GRMEP stopped paying Dr. Loewen her stipend and benefits in November 2009.

88.     GRMEP's failure to pay Dr. Loewen her stipend and benefits from November 2009 until March 2010 constitutes a breach of the Resident Agreement.

89.     Moreover, in August 2009 GRMEP's agents promised Dr. Loewen that she would be permitted to complete six (6) more months of her residency before she would be evaluated again and that she would be able to sit for the January 2010 ABSITE.

90.     The November 19th termination was in breach of this promise as it did not permit Dr. Loewen to complete the six (6) months of evaluation period and it denied her the promised opportunity to sit for the January 2010 ABSITE.

91.     In or about early January 2010, the ABSITE test was given to residents including Dr. Rogoway.

12

92.     Unlike Dr. Rogoway and Dr. Horack in 2009, Dr. Loewen was not permitted to take the ABSITE in breach of GRMEP's earlier promise.

93.     On January 14, 2010, Dr. Loewen wrote to Dr. Schlatter asking him to write a recommendation letter to enable her to transfer to a different surgical residency program.

94.     On January 19, 2010, Dr. Schlatter declined Dr. Loewen's request.

95.     On February 28, 2010, Dr. Loewen filed an internal permissible grievance regarding her dismissal.

96.     On or about March 8, 2010, Dr. Loewen received for the first time a letter from Dr. Schlatter indicating that it was her formal notification of dismissal from the GRMEP/MSU General Surgery Residency Program and termination of the Resident Agreement effective November 19, 2009.  The letter purported to be signed by Dr. Schlatter on November 23, 2009.

97.     Under the Resident Agreement at paragraph 3(a), GRMEP promised to provide Dr. Loewen with "due process" in connection with her termination grievance.

98.     GRMEP failed to provide the required "due process."

99.     GRMEP did not provide Dr. Loewen adequate notice of the charges against her or the reasons for her termination, and GRMEP did not provide her an adequate opportunity to be heard on the issue.

100.    By way of example, GRMEP refused to allow Dr. Loewen to have an attorney represent her at the hearing in front of the ad hoc grievance committee claiming that it was solely an academic decision at issue, when in fact it was an employment decision at issue or at the least a mixed employment/academic decision.

101.    Dr. Loewen should have been permitted to have legal representation at the hearing.

102.    GRMEP failed to provide an impartial fact-finding body.

103.    GRMEP refused Dr. Loewen's repeated requests to learn the identity of the ad hoc committee members before the hearing so that she could assess the members for any potential conflicts of interest.

104.    As it turned out, one of the members of the ad hoc committee did have a potential conflict of interest in the decision, and if Dr. Loewen had been provided the names of the committee members before the hearing she would have requested the recusal of that individual.

105.    As a result, Dr. Loewen was denied an impartial fact-finding body.

106.    On April 19, 2010, Dr. Loewen filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") alleging disparate treatment on the basis of age and gender.

107.    Approximately two days later, on April 21, 2010, Dr. Loewen through counsel served a copy of her discrimination charge on GRMEP, MSU, Spectrum, and Trinity and requested that she not be retaliated against for her protected conduct.

108.    A grievance hearing was held on April 27, 2010.

109.    GRMEP refused to permit Dr. Loewen to present any witnesses in her own behalf.

110.    GRMEP also refused to consider the fact that Dr. Loewen recently (April 21, 2010) had received a high score on the USMLE Step-3 examination, which is designed to assess whether examinees possess the medical knowledge and understanding of clinical science for the unsupervised practice of medicine.

111.    GRMEP further declined Dr. Loewen's previous request for the general surgery Morbidity and Mortality records for herself and other residents pertaining to the outcomes of patients

14

from July 1, 2005 through November 19, 2009 that would have shown that Dr. Loewen was in fact a safe and careful surgeon contrary to the allegations made by Dr. Schlatter that she was a threat to patient safety.

112. At the hearing, Dr. Loewen provided the Committee members with a written submission supporting her position that she was a safe and careful surgeon and physician. She also made statements during the hearing to support her position.

113. Thereafter, Dr. Loewen asked the committee members that in the event they found inaccurate any information contained either in her written submission or in her statements that they should inform her so that she would have the opportunity to respond. The panel did not reject this request and it never informed her of any such inaccuracies.

114. Also at the hearing, Dr. Loewen raised an issue involving retaliatory treatment by Dr. Schlatter. On April 15, 2009, Dr. Loewen had reported during a conference on the mis-diagnosis by Dr. James DeCou, one of Dr. Schlatter's partners, that led to an unnecessary surgery and potentially life altering complications for a child patient.

115. Shortly after this presentation of Dr. DeCou's mis-diagnosis, Dr. Schlatter cancelled part of Dr. Loewen's remediation plan and decided that Dr. Loewen would have to repeat her fourth year in remediation. In addition, Dr. Schlatter assigned Dr. Loewen to an even heavier workload compared to other residents that caused her to suffer fatigue.

116. On April 30, 2010, Dr. Loewen received the ad hoc committee's decision of April 28, 2010 that denied her grievance.

117. The ad hoc committee upheld the discharge decision and indicated that Dr. Loewen's dismissal was final. The ad hoc panel decision included no findings of fact, explanatory text, or

15

reasoning of any kind; nor did it indicate in any way what information and/or materials were considered.

118.    After receiving the denial, Dr. Loewen continued her attempt to transfer her residency to GRMEP's family practice program.

119.    Previously, in January 2010, Dr. Loewen had spoken with the Director of the family practice residency, Dr. vanSchagen, about such a transfer and he told her to get back in touch when she received her USMLE Step-3 results and that he hoped she could join his program as a second year resident on July 1, 2010.

120.    Dr. Loewen contacted Dr. vanSchagen and continued the process to transfer to the family practice residency.

121.    In May 2010, she met with the family practice residency coordinator.

122.    On June 2 and 3, 2010, Dr. Loewen met with additional personnel in the family practice residency program, and was told that the meetings had gone well.

123.    All indications were that Dr. Loewen would be accepted into the family practice residency program.

124.    By letter dated June 22, 2010, Dr. vanSchagen informed Dr. Loewen that she had been rejected from the family practice residency program claiming merely that the program was "not a good fit for you."

125.     On or about August 9, 2010, Dr. Loewen filed a charge of retaliation with the EEOC focused on the denial of due process at the ad hoc grievance panel hearing and on the denial of a position in the family practice residency program.

126.    Plaintiff requests a jury trial.

16

## VII.  PLAINTIFF'S CLAIMS

### COUNT I
**Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU**
**(Sex Discrimination – Title IX)**

127.    All of the preceding paragraphs are included here as if fully set forth.

128.    Based on information and belief, Defendants GRMEP, Spectrum, St. Mary's and MSU either individually or collectively run a program or activity involving "education" and receive "federal financial assistance."

129.    Dr. Loewen is a female, and as such is a member of a class protected by Title IX.

130.    Dr. Loewen was qualified for the position of medical resident.

131.    Dr. Loewen had been a resident in general surgery for more than four (4) years.

132.    Dr. Loewen suffered an adverse action when she was terminated from her position.

133.    Dr. Loewen's termination was motivated by her gender.

134.    Similarly situated males were treated more favorably than Dr. Loewen.

135.    The vaguely stated reasons for her termination, namely patient safety and scores on the ABSITE, are pretextual including that male residents who had lesser evaluations for patient safety and who had earned low scores on the ABSITE were not terminated.

136.    By accommodating male resident(s), Defendants discriminated against Dr. Loewen on the basis of gender.

137.    Dr. Loewen seeks all remedies and damages permitted under Title IX, including back pay, reinstatement or front pay, damages for losses prospective future employment,

17

damages for prospective harm in her present position, compensatory damages for emotional pain and suffering, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

**COUNT II**
**Plaintiff v. GRMEP, Spectrum, St. Mary's, MSU, and Dr. Schlatter**
**(Sex Discrimination – Michigan's ELCRA)**

138.    All of the preceding paragraphs are included here as if fully set forth.

139.    Dr. Loewen is a female, and as such is a member of a class protected by ELCRA.

140.    Dr. Loewen was qualified for the position of medical resident.

141.    Dr. Loewen worked as a resident for more than four (4) years.

142.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

143.    Dr. Loewen's termination was motivated by her gender.

144.    Similarly situated males were treated more favorably than Dr. Loewen.

145.    The vaguely stated reasons for her termination, namely patient safety and scores on the ABSITE, are pretextual including that male residents who had lesser evaluations for patient safety and who had earned low scores on the ABSITE were not terminated.

146.    By accommodating male resident(s), the Defendants discriminated against Dr. Loewen on the basis of gender.

147.    GRMEP, Spectrum, St. Mary's, MSU and Dr. Schlatter are considered Dr. Loewen's employers under ELCRA.

148.    Dr. Loewen seeks all remedies and damages permitted under ELCRA, including back pay, reinstatement or front pay, damages for losses prospective future employment,

18

damages for prospective harm in her present position, compensatory damages for emotional pain and suffering, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

### COUNT III
### Plaintiff v. GRMEP, Spectrum, and St. Mary's
### (Age Discrimination – ADEA)

149.    All of the preceding paragraphs are included here as if fully set forth.

150.    Dr. Loewen is over forty (40) years of age, and accordingly is a member of a class protected by the ADEA.

151.    Dr. Loewen was qualified for the position of medical resident.

152.    Dr. Loewen worked as a resident for over four (4) years.

153.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

154.    Dr. Loewen's termination was motivated by her age.

155.    Dr. Loewen avers that the stated reasons for her termination, namely poor performance, are pretextual in that significantly younger residents who performed comparably were not terminated.

156.    Based on knowledge and belief, at least one (1) less qualified resident in the residency program who was significantly younger was not terminated by Defendants.

157.    GRMEP, Spectrum, St. Mary's, and MSU are considered Dr. Loewen's employers under the ADEA.

158.    Dr. Loewen was discriminated against because of her age in violation of the ADEA.

19

159.    Dr. Loewen seeks all remedies and damages permitted under the ADEA including back pay, reinstatement, and payment of her litigation costs, including reasonable attorneys' fees plus pre-judgment and post-judgment interest.

## COUNT IV
### Plaintiff v. GRMEP, Spectrum, and St. Mary's
### (Age Discrimination – Michigan's ELCRA)

160.    All of the preceding paragraphs are included here as if fully set forth.

161.    Dr. Loewen is over forty (40) years of age, and accordingly is a member of a class protected by the ELCRA.

162.    Dr. Loewen was qualified for the position of medical resident.

163.    Dr. Loewen worked as a resident for over four (4) years.

164.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

165.    Dr. Loewen's termination was motivated by her age.

166.    Dr. Loewen avers that the stated reasons for her termination, namely poor performance, are pretextual including that significantly younger residents who performed comparably were not terminated.

167.    Based on knowledge and belief, at least one (1) less qualified resident in the residency program who was significantly younger was not terminated by GRMEP.

168.    Dr. Loewen was discriminated against because of her age in violation of ELCRA.

169.    Dr. Loewen seeks all remedies and damages permitted under the ELCRA, including back pay, reinstatement, front pay, punitive damages, and payment of her litigation costs, including

reasonable attorneys' fees plus pre-judgment and post-judgment interest.

**COUNT V**
**Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU**
**(Sex Discrimination – Hostile Work Environment – Title IX and Michigan's ELCRA)**

170.    All of the preceding paragraphs are included here as if fully set forth.

171.    Dr. Loewen is a female, and as such is a member of a class protected by Title IX and ELCRA.

172.    Dr. Loewen was qualified for the position of medical resident.

173.    Dr. Loewen avers that she worked as a resident for a period over of four (4) years.

174.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

175.    Dr. Loewen was subjected to a hostile work environment on the basis of her gender in the form of inappropriate and sexist comments directed to women in general and herself in particular made by Dr. Kemmeter, Dr. Sherman, attending physicians, fellow residents, and other employees at Spectrum, GRMEP, MSU, and at St. Mary's.

176.    Dr. Loewen was subjected to a hostile work environment on the basis of her gender in the form of an excessive work load and severely decreased material support.

177.    Dr. Loewen observed that men were not subjected to similar treatment.

178.    Dr. Loewen found that the sexist comments directed towards her were severe and pervasive.

179.    Dr. Loewen avers that the negative employment action she suffered, namely her termination, was caused in part by the hostile work environment that she experienced while

21

participating in the residency program.

180.    The aforementioned adverse employment actions were caused by the fact that Dr. Loewen had complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders.

181.    This conduct was not welcomed by Dr. Loewen.

182.    This conduct was motivated by the fact that Dr. Loewen is female.

183.    The conduct was so severe or pervasive that a reasonable person in Dr. Loewen's position would find Dr. Loewen's work environment to be hostile or abusive.

184.    Dr. Loewen believed her work environment to be hostile or abusive as a result of Defendants' conduct.

185.    Dr. Loewen was subjected to an adverse tangible employment action, namely, the termination of her employment, as a result of the hostile work environment.

186.    As a result of Defendants' discriminatory actions, Dr. Loewen has suffered damages and she seeks all remedies and damages permitted by Title IX and ELCRA including, but not limited to, back pay, front pay, compensatory damages for emotional distress and reputation loss, punitive damages attorney's fees, costs of litigation, and pre-judgment and post-judgment interest.

**COUNT VI**
**Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU**
**(Age Discrimination – Hostile Work Environment – ADEA and Michigan's ELCRA)**

187.    All of the preceding paragraphs are included here as if fully set forth.

188.    Dr. Loewen is over forty (40) years of age, and accordingly is a member of a class protected by the ADEA and the ELCRA.

189.    Dr. Loewen was qualified for the position of medical resident.

190.    Dr. Loewen avers that she worked as a resident for over four (4) years.

191.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

192.    Dr. Loewen was subjected to a hostile work environment on the basis of her age in the form of ageist comments made by attending physicians, fellow residents and other employees at Spectrum, GRMEP, MSU, and at St. Mary's.

193.    Dr. Loewen was subjected to a hostile work environment on the basis of her age in the form of an excessive work load and decreased material support.

194.    Dr. Loewen observed that significantly younger residents were not subjected to similar treatment.

195.    Dr. Loewen found that the hostile and ageist insults directed towards her were severe and pervasive.

196.    The negative employment actions Dr. Loewen suffered, including her termination, were caused in part by the hostile work environment that she experienced while participating in the residency program.

197.    This conduct was not welcomed by Dr. Loewen.

198.    This conduct was motivated by the fact that Dr. Loewen is over forty (40).

199.    The conduct was so severe or pervasive that a reasonable person in Dr. Loewen's position would find Dr. Loewen's work environment to be hostile or abusive.

200.    Dr. Loewen believed her work environment to be hostile or abusive as a result of Defendants' conduct.

23

201.    Dr. Loewen was subjected to an adverse tangible employment action, namely, the termination of her employment, as a result of the hostile work environment.

202.    As a result of Defendants' discriminatory actions, Dr. Loewen has suffered damages and she seeks all remedies and damages permitted by the ADEA and ELCRA including, but not limited to, back pay, front pay, liquidated damages, attorney's fees, costs of litigation, and pre-judgment and post-judgment interest.

## COUNT VII
### Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU
### (Retaliation – Title IX)

203.    All of the preceding paragraphs are included here as if fully set forth.

204.    Dr. Loewen complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders.

205.    Dr. Loewen also engaged in protected conduct when she filed a charge of discrimination with the EEOC and with the Michigan Department of Civil Rights.

206.    Dr. Loewen suffered an adverse employment action when Dr. Schlatter unilaterally increased her work load and decreased the material support available to her.

207.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

208.    Dr. Loewen suffered an adverse employment action when she was denied a fair and unbiased hearing regarding her internal grievance.

209.    Dr. Loewen suffered an adverse employment action when she was denied the position

as a resident in the family practice program.

210.    The aforementioned adverse employment actions were caused by the fact that Dr. Loewen had complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders and had filed charges of discrimination with the EEOC and with the Michigan Department of Civil Rights.

211.    Dr. Loewen seeks all remedies and damages available under Title IX including back pay, damages for prospective future employment, damages for prospective harm in her present position, damages for emotional distress, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.


**COUNT VIII**
**Plaintiff v. GRMEP, Spectrum, and St. Mary's**
**(Retaliation – ADEA)**

212.    All of the preceding paragraphs are included here as if fully set forth.

213.    Dr. Loewen engaged in protected conduct when she filed a charge of discrimination with the EEOC and with the Michigan Department of Civil Rights alleging age discrimination in the terms and conditions of her employment.

214.    Dr. Loewen suffered a materially adverse employment action when she was denied a fair and unbiased hearing regarding her internal grievance.

215.    Dr. Loewen suffered a materially adverse employment action when she was denied the position as a resident in the family practice program.

25

216.     The aforementioned adverse employment actions were caused by the fact that Dr. Loewen had filed charges of discrimination with the EEOC and with the Michigan Department of Civil Rights.

217.     Dr. Loewen seeks all remedies and damages available under the ADEA including back pay, liquidated damages, injunctive relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

**COUNT IX**
**Plaintiff v. GRMEP, Spectrum, St. Mary's, MSU, Dr. Schlatter, and Dr. VanSchagen**
**(Retaliation – Michigan's ELCRA)**

218.     All of the preceding paragraphs are included here as if fully set forth.

219.     Dr. Loewen complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders.

220.     Dr. Loewen also engaged in protected conduct when she filed a charge of age and sex discrimination with the EEOC and with the Michigan Department of Civil Rights.

221.     Dr. Loewen suffered an adverse employment action when Dr. Schlatter unilaterally increased her work load and decreased the material support available to her.

222.     Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident at GRMEP.

223.     Dr. Loewen suffered an adverse employment action when she was denied a fair and unbiased hearing regarding her internal grievance.

224.     Dr. Loewen suffered an adverse employment action when she was denied the position as a resident in the family practice program.

26

225.     The aforementioned adverse employment actions were caused by the fact that Dr. Loewen had complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders and had filed charges of discrimination with the EEOC and with the Michigan Department of Civil Rights.

226.     Dr. Loewen seeks all remedies and damages available under the ELCRA, including back pay, damages for prospective future employment, damages for prospective harm in her present position, damages for emotional distress, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

### COUNT X
### Plaintiff v. GRMEP
### (Breach of Contract – Excessive Hours)

227.     All of the preceding paragraphs are included here as if fully set forth.

228.     Pursuant to the accreditation rules of the ACGME applicable to the institutional Defendants and incorporated into the Resident Agreement, no resident is permitted to work in excess of eighty (80) hours per week.

229.     At an information session conducted in 2005 prior to Dr. Loewen accepting a residency position, GRMEP disclosed that its medical residency program was or had been on probation with ACGME for certain violations, including excessive work hours required of residents.

230.     At the time, GRMEP assured the candidates including Dr. Loewen that these deficiencies (i.e., excessive resident hours) would be corrected; this representation was critical to and relied on by Dr. Loewen in accepting her residency position because she still had a child at home.

231.    The Program Director for General Surgery Residency Program and Dr. Loewen's supervisor was Dr. Schlatter.

232.    Dr. Schlatter established Dr. Loewen's work schedule and academic goals.

233.    Dr. Schlatter had the obligation to protect residents enrolled in the program from demands that they work excessive (i.e., more than eighty (80)) hours.

234.    The GRMEP program nevertheless required its residents, including Dr. Loewen, to work in excess of eighty (80) hours per week in violation of applicable policies and Dr. Schlatter's obligation to prevent such work abuses.

235.    Dr. Loewen routinely was ordered to work excessive hours at home performing administrative tasks, but was told that these hours could not be recorded.

236.    Based on the foregoing actions, GRMEP breached its contract with Dr. Loewen.

237.    GRMEP's breach caused damage to Dr. Loewen including mental and physical fatigue and loss of wages for this uncompensated time.

238.    Dr. Loewen seeks all damages permitted under Michigan state law for GRMEP's breach of contract.

## COUNT XI
### Plaintiff v. GRMEP
### (Breach of Contract – Failure to Provide Written Notice of Termination and Stipend)

239.    All of the preceding paragraphs are included here as if fully set forth.

240.    The "Resident Agreement" had a twelve month term from July 1, 2009 until June 30, 2010.

241.    Dr. Loewen was terminated just four months into her twelve month contract.

242.    The Resident Agreement stated that to accomplish termination during the term of the

28

contract, GRMEP was required to provide Dr. Loewen with "written notice of termination."

243.    Dr. Loewen was not provided written notice of termination in November 2009.

244.    As a result, termination of her residency was not accomplished and her residency continued.

245.    Nevertheless, GRMEP stopped paying Dr. Loewen's stipend and benefits as of November 19, 2009.

246.    The Resident Agreement required GRMEP to pay Dr. Loewen her stipend and benefits through the date of termination.

247.    GRMEP did not provide Dr. Loewen with the required "written notice of termination" until March 2010 after she began the process of grieving her termination.

248.    GRMEP's failure to provide written notice or to pay Dr. Loewen her stipend and benefits from November 2009 until March 2010 constitutes a breach of the Resident Agreement and caused damages to Dr. Loewen including in the form of lost stipend and benefits.

249.    Dr. Loewen seeks all damages permitted under Michigan state law for GRMEP's breaches of contract.

**COUNT XII**
**Plaintiff v. GRMEP**
**(Breach of Contract – Failure to Provide Six Months of Remediation and ABSITE)**

250.    All of the preceding paragraphs are included here as if fully set forth.

251.    In August 2009 GRMEP's agents promised Dr. Loewen that she would be permitted to complete six (6) more months of her residency before she would be evaluated again and that she would be able to sit for the January 2010 ABSITE.

252.    The November 19th termination of Dr. Loewen's residency was in breach of this

promise as it did not permit Dr. Loewen to complete the six (6) months of her residency and denied

her the promised opportunity to site for the January 2010 ABSITE.

253.     GRMEP's breach of this promise caused damage to Dr. Loewen including the

opportunity to complete her fourth year of residency and take the January 2010 ABSITE.

254.     Dr. Loewen seeks all damages permitted under Michigan state law for GRMEP's

breach of contract.

## COUNT XIII
### Plaintiff v. GRMEP
### (Breach of Contract – Failure to Provide Due Process)

255.     All of the preceding paragraphs are included here as if fully set forth.

256.     Under the Resident Agreement at paragraph 3(a), GRMEP promised to provide Dr.

Loewen with "due process" in connection with her termination grievance.

257.     GRMEP failed to provide the required "due process."

258.     GRMEP did not provide Dr. Loewen adequate notice of the charges against her or

the reasons for her termination, and GRMEP did not provide her an adequate opportunity to be heard

on the issue.

259.     By way of example, GRMEP refused to allow Dr. Loewen to have an attorney

represent her at the hearing in front of the ad hoc grievance committee claiming that it was solely

an academic decision at issue, when in fact it was an employment decision at issue or at the least a

mixed employment/academic decision.

260.     Dr. Loewen should have been permitted to have legal representation at the hearing.

261.     GRMEP failed to provide an impartial fact-finding body.

262.     GRMEP refused Dr. Loewen's repeated requests to learn the identity of the ad hoc

committee members before the hearing so that she could assess the members for any potential conflicts of interest.

263.    As it turned out, one of the members of the ad hoc committee did have a potential conflict of interest in the decision, and if Dr. Loewen had been provided the names of the committee members before the hearing she would have requested the recusal of that individual.

264.    As a result, Dr. Loewen was denied an impartial fact-finding body.

265.    A grievance hearing was held on April 27, 2010 but it was inadequate and did not constitute due process.

266.    GRMEP refused to permit Dr. Loewen to present any witnesses in her own behalf.

267.    GRMEP also refused to consider the fact that Dr. Loewen recently (April 21, 2010) had received a high score on the USMLE Step-3 examination, which is designed to assess whether examinees possess the medical knowledge and understanding of clinical science for the unsupervised practice of medicine.

268.    GRMEP further declined Dr. Loewen's previous request for the general surgery Morbidity and Mortality records for herself and other residents pertaining to the outcomes of patients from July 1, 2005 through November 19, 2009 that would have shown that Dr. Loewen was in fact a safe and careful surgeon contrary to the allegations made by Dr. Schlatter that she was a threat to patient safety.

269.    On April 30, 2010, Dr. Loewen received the ad hoc committee's decision of April 28, 2010 that denied her grievance as a result of the denial of due process.

270.    The ad hoc committee upheld the discharge decision and indicated that Dr. Loewen's dismissal was final.  The ad hoc panel decision included no findings of fact, explanatory text, or

reasoning of any kind; nor did it indicate in any way what information and/or materials were considered.

271.     Dr. Loewen suffered damages as a result of GRMEP's failure to provide due process including the "final" dismissal of her from the residency program.

272.     Dr. Loewen seeks all damages permitted under Michigan state law for GRMEP's breach of contract.

## COUNT XIV
### Plaintiff v. GRMEP, Spectrum, and St. Mary's
### (Unjust Enrichment – Failure to Pay for Excessive Hours)

273.     All of the preceding paragraphs are included here as if fully set forth.

274.     Under Michigan law, the elements for a claim of unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant.

275.     All of the Defendants are subject to the ACGME regulations. Defendants received a benefit from Dr. Loewen when she worked hours in excess of the eighty (80) hour limit prescribed by the ACGME regulations.

276.     Defendants received a benefit from Dr. Loewen when she worked uncompensated hours at the facilities associated with GRMEP, Spectrum, St. Mary's, and MSU.

277.     GRMEP retained the aforementioned benefit by persisting in not compensating Dr. Loewen for the uncompensated hours she worked at the affiliated facilities.

278.     An injustice will result to Dr. Loewen if she is not retroactively compensated for the uncompensated hours she worked at the affiliated facilities.

279.     Dr. Loewen lacks any other remedy at law regarding the unjust receipt of the

aforementioned benefit by Defendants.

280.     Dr. Loewen requests any and all appropriate damages under Michigan law for this

unjust enrichment, including, but not limited to, retroactive compensation, with appropriate interest,

and costs of this lawsuit.

## COUNT XV
### Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU
### (Sex Discrimination – Title VII)

281.     All of the preceding paragraphs are included here as if fully set forth.

282.     Defendants GRMEP, Spectrum, and/or St. Mary's were either employers of, or else

were members of an association that employed, Dr. Loewen.

283.     Dr. Loewen is a female, and as such is a member of a class protected by Title VII.

284.     Dr. Loewen was qualified for the position of medical resident.

285.     Dr. Loewen had been a resident in general surgery for more than four (4) years.

286.     Dr. Loewen suffered an adverse action when she was terminated from her position.

287.     Dr. Loewen's termination was motivated by her gender.

288.     Similarly situated males were treated more favorably than Dr. Loewen.

289.     The vaguely stated reasons for her termination, namely patient safety and scores on

the ABSITE, are pretextual including that male residents were not safer and who had earned low

scores on the ABSITE were not terminated.

290.     By accommodating male resident(s), Defendants discriminated against Dr. Loewen

on the basis of gender.

291.     By not terminating male resident(s), Defendants discriminated against Dr. Loewen

on the basis of gender.

33

292.    Dr. Loewen seeks all remedies and damages permitted under Title VII, including back pay, reinstatement or front pay, damages for losses prospective future employment, damages for prospective harm in her present position, compensatory damages for emotional pain and suffering, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

### COUNT XVI
### Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU
### (Hostile Work Environment – Title VII)

293.    All of the preceding paragraphs are included here as if fully set forth.

294.    Defendants GRMEP, Spectrum, and/or St. Mary's were either employers of, or else were members of an association that employed, Dr. Loewen.

295.    Dr. Loewen is a female, and as such is a member of a class protected by Title VII.

296.    Dr. Loewen was qualified for the position of medical resident.

297.    Dr. Loewen avers that she worked as a resident for over four (4) years.

298.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

299.    Dr. Loewen was subjected to a hostile work environment on the basis of her gender in the form of sexist comments made by attending physicians, fellow residents and other employees at Spectrum, GRMEP, and St. Mary's.

300.    Dr. Loewen was subjected to a hostile work environment on the basis of her gender in the form of an excessive work load and decreased material support.

301.    Dr. Loewen observed that male were not subjected to similar treatment.

302.    Dr. Loewen found that the hostile and sexist insults directed towards her were severe

34

and pervasive.

303.   The negative employment actions Dr. Loewen suffered, including her termination, were caused in part by the hostile work environment that she experienced while participating in the residency program.

304.   This conduct was not welcomed by Dr. Loewen.

305.   This conduct was motivated by the fact that Dr. Loewen is female.

306.   The conduct was so severe or pervasive that a reasonable person in Dr. Loewen's position would find Dr. Loewen's work environment to be hostile or abusive.

307.   Dr. Loewen believed her work environment to be hostile or abusive as a result of Defendants' conduct.

308.   Dr. Loewen was subjected to an adverse tangible employment action, namely, the termination of her employment, as a result of the hostile work environment.

309.   As a result of Defendants' discriminatory actions, Dr. Loewen has suffered damages and she seeks all remedies and damages permitted by Title VII including, but not limited to, back pay, front pay, punitive damages, attorney's fees, costs of litigation, and pre-judgment and post-judgment interest.

## COUNT XVII
### Plaintiff v. GRMEP, Spectrum, St. Mary's, and MSU
### (Retaliation – Title VII)

310.   All of the preceding paragraphs are included here as if fully set forth.

311.   Defendants were either employers of, or else were members of an association that employed, Dr. Loewen.

312.   Dr. Loewen is a female, and as such is a member of a class protected by Title VII.

313.    Dr. Loewen complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders.

314.    Dr. Loewen also engaged in protected conduct when she filed a charge of discrimination with the EEOC and with the Michigan Department of Civil Rights.

315.    Dr. Loewen suffered an adverse employment action when Dr. Schlatter unilaterally increased her work load and decreased the material support available to her.

316.    Dr. Loewen suffered an adverse employment action when she was terminated from her position as a resident.

317.    Dr. Loewen suffered a materially adverse action when she was denied a fair and unbiased hearing regarding her internal grievance.

318.    Dr. Loewen suffered an adverse employment action when she was denied the position as a resident in the family practice program.

319.    The aforementioned adverse employment actions were caused by the fact that Dr. Loewen had complained of the unequal treatment of male and female residents in terms of pay and in terms of working hours and conditions to Dr. Schlatter and to other GRMEP program leaders and had filed charges of discrimination with the EEOC and with the Michigan Department of Civil Rights.

320.    Dr. Loewen seeks all remedies and damages available under Title VII, including back pay, damages for prospective future employment, damages for prospective harm in her present position, damages for emotional distress, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-

judgment interest.

Respectfully submitted,

| LIEBER, HAMMER, HUBER, & BENNINGTON, P.C. | DREW, COOPER, & ANDING |
|---|---|
| s/James B. Lieber _____ | s/ Stephen Drew _____ |
| James B. Lieber | Stephen Drew |
| PA I.D. 21748 | MI I.D. P24323 |
| Thomas M. Huber | Drew, Cooper, & Anding |
| PA I. D. 83053 | Aldrich Place, Suite 200 |
| 5528 Walnut Street | 80 Ottawa Avenue N.W. |
| Pittsburgh, PA 15232-2312 | Grand Rapids, MI 49503 |
| Tel.: (412) 687-2231 | Tel: (616) 454-8300 |
| Fac.: (412) 687-3140 | Fac. (616) 454-0036 |
| Email: LHlawfirm@aol.com | Email: sdrew@dcadvocate.com |

Date: January 25, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MARGARET J. LOEWEN, M.D. | ) | Civil Action No. 1:10-cv-1284 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GRAND RAPIDS MEDICAL | ) | **JURY TRIAL DEMANDED** |
| EDUCATION PARTNERS, a corporation, | ) | |
| SPECTRUM HEALTH SYSTEM, a | ) | |
| corporation, TRINITY HEALTH | ) | |
| CORPORATION, a corporation t/d/b/a | ) | |
| SAINT MARY'S HEALTH CARE, | ) | |
| MICHIGAN STATE UNIVERSITY, a | ) | |
| corporation, MARC SCHLATTER, | ) | |
| an individual, and JOHN vanSCHAGEN, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

I certify that the foregoing was filed electronically with the Court's CM/ECF system and was

served on the following via private courier:

Grand Rapids Medial Education Partners
1000 Monroe Avenue N.W.
Grand Rapids, MI 49503

David M. Leonard
Attorney for Defendant Spectrum Health System
100 Michigan Street N.W.
Grand Rapids, MI 49503
david.leonard@spectrum-health.org

Trinity Health Corporation
200 Jefferson Street S.E.
Grand Rapids, MI 49503

Theresa Kelly
Attorney for Defendant Michigan State University
Michigan State University Office of General Counsel
494 Administration Building
East Lansing, MI 48824
kellyt@msu.edu

Marc Schlatter, M.D.
1000 Monroe Avenue N.W.
Grand Rapids, MI 49503

John vanSchagan
1000 Monroe Avenue N.W.
Grand Rapids, MI 49503


                                                    s/ James B. Lieber