UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARGARET J. LOEWEN, M.D.,

        Plaintiff,

    v.                              File No. 1:10-CV-1284

GRAND RAPIDS MEDICAL EDUCATIONAL
PARTNERS, a corporation;
SPECTRUM HEALTH SYSTEM, a
corporation; TRINITY HEALTH
CORPORATION, a corporation t/d/b/a
SAINT MARY'S HEALTH CARE;
MICHIGAN STATE UNIVERSITY, a
corporation; MARC SCHLATTER, an
individual; and JOHN vanSCHAGEN,
an individual,

        Defendants.
_____/

Oral Argument re:  Defendant Michigan State University's
Motion to Dismiss or for Summary Judgment
and Defendants Trinity Health Corporation and
Spectrum Health System's Joint Motion to Dismiss
and for Summary Judgment

Before

THE HONORABLE GORDON J. QUIST
United States District Judge
May 18, 2011

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

APPEARANCES

JAMES B. LIEBER
5528 Walnut St.
Pittsburgh, PA 15228
Attorney for Plaintiff

SARA G. LACHMAN
250 Monroe Ave., NW
Suite 800
Grand Rapids, MI 49503
Attorney for Defendants
GRMEP, Spectrum Health,
vanSchagen and Schlatter


STEPHEN R. DREW
80 Ottawa Ave., NW
Suite 200
Grand Rapids, MI 49503
Co-Counsel for Plaintiff

DANIEL J. BRETZ
500 Woodward Ave.
Suite 3500
Detroit, MI 48226
Attorney for Defendant
Trinity Health


THERESA KELLEY
Office of the General Counsel
Michigan State University
494 Administration Bldg.
East Lansing, MI 48824
Attorney for Defendant
Michigan State University

```
 1                                    Grand Rapids, Michigan

 2                                    May 18, 2011

 3                                    11:05 a.m.

 4                          -    -    -

 5

 6                   P R O C E E D I N G S

 7

 8          THE COURT:  Good morning.  Please be seated.

 9          I was just told when the door opened back there that

10  somebody filed something 86 pages long yesterday which I found

11  out about for the first time.  What's all that about?  Was it

12  the plaintiff that filed it?

13          MR. LIEBER:  Your Honor, James Lieber for the

14  plaintiff.  Yes, we filed the complete handbook for residents,

15  parts of which have been filed in the past.

16          THE COURT:  Okay.  All right.  We're here on the

17  case of Margaret Loewen, M.D., against Grand Rapids Medical

18  Education Partners and others, case number 1:10-CV-1284.  Can

19  I have the appearance of counsel, please?

20          MR. LIEBER:  James Lieber for the plaintiff,

21  Margaret Loewen, who's here today.

22          THE COURT:  Thank you.

23          MR. DREW:  Stephen Drew on behalf of the plaintiff,

24  Your Honor.

25          MS. LACHMAN:  Sara Lachman here on behalf of
```

1    Spectrum.

2         MR. BRETZ:  Daniel Bretz on behalf of Trinity Health

3    and Saint Mary's Health Care.

4         THE COURT:  I'm sorry?

5         MR. BRETZ:  Daniel Bretz.

6         THE COURT:  All right.

7         MS. KELLEY:  Theresa Kelley for Michigan State

8    University.

9         THE COURT:  Okay.  All right.

10        I've gone over the briefing fairly thoroughly, read

11   some of the leading cases, maybe all of them, so you don't

12   have to spend a lot of time reviewing the facts.  So if you

13   make your presentation, get right to the heart of it right

14   away.

15        Okay.  Let me hear from you first, then, Mr.

16   Lachman -- Ms. Lachman, I'm sorry.  Sara Lachman, okay.

17        MS. LACHMAN:  Certainly, Your Honor.

18        Well, I won't go into too many details.  It's

19   obviously a very large complaint.  There's 13 counts that have

20   been asserted against the hospitals, and we believe that there

21   are essentially five reasons that all those counts should be

22   dismissed, particularly the Title VII, ADEA, and ELCRA claims.

23   They fail because the hospitals were not plaintiff's employer.

24        The Title IX claims fail because the hospitals are

25   not educational institutions.  The Title IX claims also fail

1    because the plaintiff has not alleged that the hospitals were

2    deliberately indifferent to known acts of harassment which is

3    required under Title IX.

4            All the discrimination and retaliation claims fail

5    because there's just been no allegation that the hospitals

6    took any adverse employment action against the plaintiff.  And

7    lastly, the unjust enrichment claim fails because a resident

8    agreement governs the terms of her residency.  Where there's

9    an express contract, an unjust enrichment claim cannot stand.

10           THE COURT:  Is the unjust enrichment claim still in

11   front of this?  I know it's not -- nothing's been formally

12   done about it, but I didn't notice any big objections to the

13   unjust enrichment claim going.  Maybe the plaintiff can answer

14   that.

15           MS. LACHMAN:  I can answer it as well, Your Honor.

16   There was a claim asserted -- the unjust enrichment claim was

17   asserted against GRMEP as well as the hospitals, and the

18   plaintiff does not -- did not contest the motion by GRMEP, and

19   so that has been dismissed by the Court I believe on Monday.

20   But the plaintiff has not -- does contest the motion to

21   dismiss as to the hospital.

22           So to just touch briefly on each of those issues,

23   the first being that the hospitals were not the plaintiff's

24   employer, the test really is not whether there's a

25   relationship between the hospitals and the residency program,

1    GRMEP's residency program.  A mere relationship isn't enough.

2    The test is did the hospitals have sufficient control over the

3    terms and conditions of the plaintiff's employment, and they

4    didn't.  Everything shows that.

5              Not only does the plaintiff fail to allege anything

6    more than they -- I think the language was they were

7    considered her employers in her complaint, so it's an obvious

8    failure under the pleading standards.  But it doesn't help to

9    grant leave to amend because she can't prove that they were

10   employers.

11             GRMEP, under the Operating Agreement, it's GRMEP's

12   responsibility to recruit, select, pay, hire, discipline,

13   suspend, dismiss from the program the residents.  The

14   hospitals don't have any control over that.  The same thing is

15   reflected in the resident agreement that Dr. Loewen had with

16   GRMEP.

17             And then in reference to the I believe it was

18   88-page exhibit that was filed last night, I did have some

19   time last evening to go through it, and there isn't anything

20   else different in that.  All of that is supportive as well.

21   The terms and conditions of Margaret Loewen's residency was

22   controlled by GRMEP, and there also was an affidavit by

23   GRMEP's CFO that supported it as well.  GRMEP was the

24   employer.  They don't deny it.

25             The plaintiff argues that sure, GRMEP was the

1    employer, but, well, then the hospitals should be considered

2    joint employers.  That argument fails.  The plaintiff will

3    cite things like the hospitals had people on the Board of

4    Directors, things like that, that they -- that the residency

5    program used the hospitals' facility.  None of these things

6    suffice.  That's not control over her terms and conditions of

7    employment.

8         And one thing we did not cite in our brief, it was a

9    case that we just located this morning, actually, but if the

10   Court would allow, I'd just like to cite a reference to it.

11   That is Moldenhauer v. Tazewell-Pekin Consolidated

12   Communication Center, et al.  That case is at 536 F.3d. 640.

13   It's a Seventh Circuit case.  It's recent, from 2007, and that

14   case is instructive here.

15        In that case there was a dispatcher that worked for

16   a nonprofit 911 dispatch center and a city and a county used

17   those services.  They did many things.  Not only did the

18   nonprofit use the city and county's facilities, but they did

19   all sorts of things, including listing themselves as employer

20   on many of her employment documents, tax returns, things like

21   that, and they certainly had people sitting on the board for

22   Taz-Com.

23        But the Seventh Circuit said that's not enough to

24   create a joint employment situation.  They didn't have

25   ultimate control over the terms and conditions of her

1     employment.  Particularly, they couldn't hire and fire.  And
2     so what they said there is many, many government -- many
3     government officials sit on many boards, and this fact alone
4     cannot suffice to justify the extension of the joint employer
5     liability.  But obviously, neither did any of the other
6     factors that were there as well because they didn't find joint
7     employment there.

8          Then also the plaintiff talks about public
9     accommodation and the plaintiff says, well, to the extent
10    there isn't any joint employer relationship here, then there's
11    a public accommodation case.  But again, that's not true, and
12    here's why.

13         The plaintiff refers to the Haynes case, and that's
14    where there was a physician who had privileges at a hospital
15    and the hospital later took away those privileges.  And the
16    difference is here the hospitals didn't take anything away
17    from Dr. Loewen.  GRMEP dismissed Dr. Loewen from the program,
18    not the hospitals.  There's no -- it's not as though there's
19    some sort of premises liability that because she was using the
20    hospitals' facilities to complete her residency program, that
21    all of a sudden the fact that they might have this public
22    hospital that's accessible to the public, that all of a sudden
23    there's a public accommodations claim.  It's just not so.

24         Now, if the Court is fine with me doing so, I'd like
25    to talk about the Title IX claims a little bit.

1          THE COURT:  Go ahead.

2          MS. LACHMAN:   So under Title IX the hospitals are

3    not educational institutions.   They don't have as their

4    primary purpose or even any kind of central purpose whatsoever

5    to be an educational institution.   That's not a hospital like

6    U of M's hospital or anything like that.   It's not a teaching

7    hospital.   I'm talking about Spectrum and Trinity, and these

8    are hospitals and their primary purpose is to treat patients.

9    The fact that they allow residents to use their facilities

10   through this residency program doesn't make them a teaching

11   hospital.   It doesn't make them an educational institution by

12   any stretch.

13          And the plaintiff, you know, first off, she doesn't

14   sufficiently allege that they're educational institutions.

15   But still, it doesn't help to grant leave to amend here

16   because there just aren't any features she could point to to

17   say that this is an educational institution.

18          For example, the hospitals, they don't evaluate.

19   They don't provide the instructors.   They don't provide the

20   course training.   They're not involved in the day-to-day

21   management of the residency programs.   They don't grade.   They

22   don't provide certifications.   The residency program is simply

23   ancillary to the hospitals' purpose.

24          And the plaintiff cites or makes the argument that

25   because the hospital receives federal funds, it is therefore

1    an educational institution.  But that can't be so because lots

2    of places receive federal funds.  I think MDOT probably

3    receives federal funds for roads.  That doesn't make them an

4    educational institution.  Those are two separate inquiries.

5    So the fact that the hospitals may receive federal funds does

6    not bring them within the purview of Title IX.

7            Even so, even so, a Title IX claim would necessarily

8    fail because under Title IX, Title IX is not used as

9    frequently, and one of the key reasons, I'm sure, is that the

10   legislature really narrowed its purpose and they decided they

11   were not going to impose liability based on agency principles.

12   Because of that, they've required this deliberate indifference

13   standard.  The hospitals would have actually had to have known

14   of discriminatory treatment and had the opportunity to correct

15   it and then been deliberately indifferent to that harassment

16   or discrimination.  The plaintiff doesn't allege it.  She

17   can't allege it.  The hospitals weren't involved.  So any

18   which way, the Title IX claim fails.

19           Then I also want to mention in terms of there was no

20   adverse employment action by the hospitals.  I referenced it

21   earlier, but I think it's important to stress it was not the

22   hospitals' decision to dismiss Dr. Loewen from the program.

23           I anticipate that the plaintiff will say there was a

24   special or surgical education board or there were teachers

25   that had a relationship with the hospital that somehow had

1       some influence.  First, the people that the plaintiff has

2       identified, those aren't employees of the hospitals.  They are

3       people who have privileges at the hospitals and they're able

4       to use the hospital the way that many surgeons around town use

5       them.  That's just a misstatement in the plaintiff's response

6       brief, and we filed affidavits in support of that.

7               But in addition, even if any were employees or had

8       independent contractor relationships or had any affiliation

9       whatsoever, the work that they're doing at GRMEP as

10      instructors or anything of the sort, they're not doing in

11      their role as a hospital agent.  For example, many doctors who

12      work at the hospitals, they have their own independent private

13      practices, and when they're working in their private

14      practices, they're not doing so on behalf of the hospital.  So

15      if they are working as teachers, if they're moonlighting over

16      at GRMEP as teachers, well, that's not anything they're doing

17      on behalf of the hospital.

18              And then lastly, I just want to address the unjust

19      enrichment claim.  That fails because there's already a

20      contract on this subject matter.  That's why I understand

21      plaintiff was willing to dismiss it as to GRMEP.

22              The plaintiff here contends against the hospitals

23      that it survives because the hospital was not a party to the

24      contract.  That's true, but it doesn't change the analysis,

25      because the hospitals were effectively contemplated in that

1   contract.  The contract between Dr. Loewen, it gives her a

2   grant for the work that she's doing in the residency program.

3   I believe it was $40,000, and it says that the compensation --

4   all compensation in any form is for her furthering her

5   educational studies, and it expressly says it is not for

6   patient care services.

7           And beyond that it says, this is a quote:  "No

8   compensation of any kind or nature shall be paid to or

9   accepted by resident from patients or third parties," like the

10  hospitals, "for any services rendered."  So she has waived any

11  claim that she could have had against the hospitals for

12  compensation, and the hospitals should be allowed to rely on

13  that contract for protection against an unjust enrichment

14  claim.  She already negotiated the terms of her residency and

15  she shouldn't be able to look for more later.

16          THE COURT:  Thank you, Ms. Lachman.

17          Okay.  Mr. Bretz, go ahead.

18          MR. BRETZ:  Good morning, Your Honor.

19          Ms. Lachman covered virtually all the points that I

20  need to cover in our joint brief.  As you know, I represent

21  Trinity Health and its facility, Saint Mary's Health Care, and

22  I just want to perhaps emphasize some of the points in

23  particular with regard to my client.

24          The Court's well aware of 12(b)(6) pleading

25  requirements.  They can't be conclusory.  There must be some

1     factual support for the allegation, and there are zero facts

2     alleged in the complaint, and the complaint is quite lengthy,

3     zero facts alleging that Saint Mary's Health Care controlled

4     any term or condition of the plaintiff's employment, that they

5     set any standards for her to achieve, that they took any

6     employment action with respect to her, or that they're even an

7     educational facility.  No facts.

8              The sole activity that the plaintiff alleges

9     occurred at Saint Mary's is in Paragraph 31 of the complaint

10    where she says some unnamed nurses at Saint Mary's undermined

11    the authority of female surgical residents.  That's it.  And

12    there is nothing in the complaint to support the totally

13    conclusory allegation that Saint Mary's Health Care and

14    Spectrum are considered employers.  To the contrary, they are

15    not.  There is no factual improvement that's available in this

16    complaint to make them the plaintiff's employers, and that's

17    what we've shown.

18              This complaint is defective on its face.  GRMEP is a

19    Michigan nonprofit corporation.  GRMEP has conceded it was

20    plaintiff's employer.  All of the adverse actions alleged in

21    the complaint were taken by GRMEP.  Paragraph 79, Plaintiff

22    had a contract with GRMEP.  Paragraph 80, the contract was

23    terminated by GRMEP.  Paragraph 81, GRMEP did not provide

24    notice.  84, GRMEP did not pay her stipended benefits.

25    Paragraph 85, GRMEP breached the contract.  There are no

1    allegations even remotely like that against Trinity Health,

2    Saint Mary's, or Spectrum.

3            Plaintiff's reply brief cites to certain stray

4    facts, I'll characterize them as that, that an employee of

5    Saint Mary's once served on GRMEP's board.  Ms. Lachman has

6    cited the case.  The fact that an employee of one entity

7    serves on a nonprofit board does not make the primary entity

8    an employer in that case.  I can sit on the board of the YMCA.

9    That doesn't make my law firm an employer for purposes of YMCA

10   employees, and there's no law to support that assertion.

11           Plaintiff also cites in her response that she has

12   access to the hospital facilities and that the hospital could

13   bar her from access.  Well, that's the same as any visitor,

14   any vendor, any patient for that matter who accesses the

15   hospital's facilities.

16           The plaintiff alleges she got a DEA number from the

17   hospital so she could write scripts.  That doesn't make her an

18   employee.  That makes her a physician at best with some

19   privileges.

20           Then the plaintiff points to this list of program

21   leadership, all the doctors who serve as instructors or

22   program directors at GRMEP.  We've submitted a declaration,

23   even if plaintiff could improve her pleading, to say none of

24   these are employees of Trinity Health or Saint Mary's Health

25   Care.  They're in fact independent contractors.  They're

1   physicians with privileges, some at Saint Mary's, some at

2   Spectrum.  They are by definition independent.  We don't

3   control them.  So the fact that they may serve as instructors

4   or program directors at GRMEP is not binding on an entity that

5   they have a separate independent contract with, nor does it

6   flow liability through to that contracting entity.

7           So those allegations are insufficient.  The

8   complaint cannot be perfected or improved, and the 12(b)(6)

9   dismissal is appropriate.

10          THE COURT:  Thank you.

11          Ms. Kelley for MSU?

12          MS. KELLEY:  Good morning, Your Honor.

13          Again, many of the same arguments apply to the

14  university as well.  Plaintiff sues MSU for discrimination and

15  retaliation under Title IX, Title VII, the ADEA, and

16  Elliott-Larsen Civil Rights Act.  The university as a state

17  institution is immune from liability under the ADEA.

18          And just to be clear about MSU in this setting, Your

19  Honor, this is not one of MSU's residency programs.  We have a

20  medical school.  We do operate some residency programs, but

21  this just isn't one of them.  This is a residency program

22  operated by GRMEP, and MSU's role in the relationship here is

23  defined by the parties' Operating Agreement.  And what that

24  Operating Agreement says is that MSU shall serve as the

25  affiliated institution for the residency program, and the

1    parties have said what this means.  What this means is that

2    the educational departments of GRMEP shall work cooperatively

3    with the educational departments of the university in

4    implementing educational and training programs that GRMEP

5    operates and manages.  So we're to work cooperatively with

6    GRMEP in developing training programs, education programs.  So

7    that's what MSU's role is here.

8              MSU, again to reiterate, MSU didn't pay the

9    plaintiff.  It wasn't plaintiff's employer.  It didn't provide

10   her with benefits.  It was not involved in any way in her

11   selection for the residency program or her dismissal from the

12   residency program.  The Operating Agreement and the evidence

13   shows that these responsibilities were placed squarely on

14   GRMEP.

15             Under both federal and state discrimination laws,

16   you have to show if you're going to be liable, held liable as

17   an employer that you control the terms and conditions of the

18   plaintiff's employment, that you control the means and manner

19   of plaintiff's work.  That just didn't happen here with

20   respect to MSU.  I mean, it's just -- it's clear that GRMEP

21   controlled plaintiff's work, the scheduling, the selection,

22   the dismissal, the pay, the benefits.

23             With respect to the Title IX claim, Your Honor, MSU

24   clearly is an institution that is subject to Title IX.  We

25   receive federal monies.  But that doesn't mean we are subject

1    to liability here.  First of all, MSU paid no money to GRMEP

2    for operation of this residency program.  MSU paid some monies

3    to GRMEP for some operation of some programs that it ran for

4    MSU's medical students, but again, no money was paid to GRMEP

5    for operation of this residency program.  No funding was ever

6    given to GRMEP.

7            Not only that, Your Honor, but under Title IX you

8    cannot use an agency theory to hold an institution liable.

9    You can't use a joint employer theory; you can't use an agency

10   theory to make MSU liable here.  MSU has to be held liable

11   under Title IX for its own misconduct, its own alleged

12   deliberate indifference.

13           Here we don't even have any MSU employees that are

14   the alleged actors in this case.  None of them are employed by

15   MSU, so there can be no misconduct by MSU under Title IX.  So

16   there's simply no federal liability under Title IX here, Your

17   Honor, and unless the Court has questions, I'll save any

18   remaining time for rebuttal.

19           THE COURT:  All right.  Thank you.

20           Okay.  Plaintiff's positions, Mr. Huber.  Is it Mr.

21   Huber?

22           MR. LIEBER:  Mr. Lieber.

23           THE COURT:  Lieber?

24           MR. LIEBER:  Yes.  I believe Mr. Huber --

25           THE COURT:  I'm sorry.  I have a hard time hearing

1    now.  Mr. Drew maybe can explain that to you.  I had my

2    hearing injured in Guy Fawkes Night in 2008.  So anyway, here

3    we are.

4              MR. LIEBER:  Mr. Huber has -- he's my partner and he

5    has also entered his appearance.

6              Your Honor, Rule 56 under the United States Supreme

7    Court's trilogy of <u>Anderson</u>, <u>Celotex</u>, and <u>Matsushita</u> which

8    have been referred to in many of the parties' briefs as well

9    as in this circuit's case in <u>Morris v. Morris</u> indicate that

10   your purview here is the pleadings, depositions, answers to

11   interrogatories, and admissions on file.  Well, we're at kind

12   of a disadvantage here.  There's been no discovery.  There's

13   been no -- there are no depositions.  We don't have responsive

14   pleadings from most of the parties, only from GRMEP.

15             Now, as the non-moving party under that trilogy I

16   have the affirmative duty to direct the Court's attention to

17   those specific portions of the record as it exists upon which

18   we seek to create gen -- we seek to create genuine issues of

19   material fact.  The main material fact at issue here is who is

20   the employer?  Is there a joint employer for purposes of the

21   fair employment and civil rights laws?  And we would suggest

22   to you that even in its preliminary posture, the record makes

23   clear that there are significant admissions on file.

24             Now, I'd like to just review --

25             THE COURT:  Well, you have to start, it seems to me,

1    with the contract between GRMEP and the other programs.  But

2    let me just read it to you:  GRMEP shall serve as the sponsor

3    of the programs for the residents, the residency programs, and

4    shall employ the residents.  GRMEP will have overall

5    responsibility for the recruitment, selection, employment, and

6    orientation of the residents, will supervise and evaluate the

7    overall performance of the residents, and develop and maintain

8    a curriculum for each program that meets the requirements for

9    the appropriate accreditation agencies.  They also pay them.

10   They withhold income and Social Security taxes from payments

11   to residents.

12        If you read the cases, even the Sixth Circuit case

13   involving the Kentucky schools, it's almost like a

14   follow-the-money issue in order to determine whether someone

15   is an employer or an employee of a particular organization.

16   Go ahead.

17        MR. LIEBER:  Your Honor, that would be -- first of

18   all, the follow-the-money issue is an issue upon which there

19   is some documentary concessionary material.  As my opponent

20   for Michigan State recently referenced, yes, there is money

21   for GRMEP to educate rotating surgical undergraduate medical

22   students that go through this program here in Grand Rapids.

23   Well, my client, and we've presented evidence information to

24   this effect, part of her duties where she was actually a

25   clinical instructor also from Michigan State, a very frequent

1    duty for her was to educate those students.  That was her job

2    as a resident.

3           So we think Michigan State does have at least one

4    palpable connection where money flowed, and there are

5    documents on file, including my client's appointment letter

6    and an evaluation, plus the operating documents which say yes,

7    GRMEP does allow Michigan State to control the selection,

8    placement, rotation, and education of those surgical medical

9    students who participate with the program.  This is one of her

10   key duties as a joint employee.  And, I mean, I can't tell you

11   the extent of it without more discovery, but it happens quite

12   frequently.

13          THE COURT:  Well, if you're saying that you need

14   more discovery -- you made a number of assertions to come up

15   with an argument that there is a joint employment relationship

16   here.  Do you need discovery to fill out those assertions?

17   I'm talking about Pages 5 and 6 of your response to Saint

18   Mary's and also your response to MSU at Page 9.  Are you

19   saying that you need discovery to fill out those assertions?

20   What other types of assertions or proofs do you think you can

21   have to show that she was an employee of MSU, Spectrum, or

22   Saint Mary's?

23          MR. LIEBER:  Well, I can run through the record,

24   Your Honor, to show where she -- there already is Twombly-type

25   evidence that suggests that she -- which is the test at this

1       point, that suggests that she is an employee, a joint

2       employee.  What my opponents seem to be saying is that Dr.

3       Loewen has to show somehow that they are predominant employers

4       to be within the scope of Title VII's joint employment test,

5       which must be -- which should be construed liberally.

6               But if I could, Your Honor, I'd like to run through

7       some of those tests that show not only that she is a joint

8       employee, that dual employment relations already exist, and

9       indeed in the record even before you there are indicia of it.

10      Perhaps it could be fleshed out more in discovery, but already

11      we have a fair amount of it.  They want to say -- they want to

12      minimize it, and their arguments, if you will, sir, go mainly

13      to the issue of weight of the evidence.

14              They will basically say that certain aspects of her

15      employment, and I think you've heard some of this in their

16      argument, well, that doesn't really mean anything because it's

17      in a hospital, or that doesn't mean anything because she had

18      access to the hospital; well, so does everybody else.  Well,

19      that's not true.  She had very extensive security-based access

20      to the hospital that everyone else didn't have.  She had

21      access to regions of the hospital that everyone else didn't

22      have.  She had access to the Internet, Intranet system of the

23      hospital on a controlled basis and the Internet in ways that

24      other people didn't.

25              There are so many control features here, if you

1    simply let me review them, I think that it's clear, it's

2    clear that Spectrum is in this case.  There's no question

3    about Spectrum.  Saint Mary's to a lesser extent may be in the

4    case, and that's an area I'm assuming and I think the Court

5    can assume that enhanced discovery would show that Saint

6    Mary's is on a par with Spectrum, and that's an area where I

7    think that discovery should be taken.

8              Now, in terms of --

9              THE COURT:  Specifically what discovery are you

10   wanting here?

11             MR. LIEBER:  All right.  Well, what I'd like to do

12   with Your Honor is to show you the control features that we

13   know about with Spectrum, and then --

14             THE COURT:  Don't you have those in your brief?  I

15   thought those were in your response brief.

16             MR. LIEBER:  Some of them were.  But we sent another

17   document in which is actually --

18             THE COURT:  Is that that 80-page one that I just

19   heard about walking out here?

20             MR. LIEBER:  Yeah, that's right.  You got a part of

21   it from the defendants, Your Honor, and I went through it, and

22   quite frankly there are a lot of control features in it which

23   again I'm willing to review with the Court.  And I would like

24   to be able to make a record on these issues because I think it

25   would be an injustice at this juncture to simply dismiss the

1    case, especially against Spectrum and MSU, without allow --

2    without even allowing the opportunity to amend or add more

3    discovery.  In fact, the control features are so great with

4    Spectrum particularly that we could conceivably in the

5    alternative plead a sole employer or integrated employer

6    theory as well as a joint employer theory.  Now, I can point

7    those things out to you in the record, and I would like to.

8           THE COURT:  Well, don't do it now.  You know, I've

9    read the materials, and to go through the record at this point

10    in time I think would -- it's not fair to me, I mean, to start

11    getting into it because I went over it quite thoroughly,

12    frankly, the materials, the written materials that were

13    submitted, and I've got a list of the factors that you looked

14    at or mentioned and I've already mentioned them as part of the

15    record.  That's why I asked the question.  Do you need more

16    than that to support your assertion that these hospitals were

17    employers of the plaintiff?

18           MR. LIEBER:  We would need more discovery, Your

19    Honor, if we need to prove that we have a triable case on that

20    issue.  We would need to go into some of these control

21    features and find out what they mean and what the inferences

22    of them are.

23           THE COURT:  Sir, we're not -- even now I think we're

24    past the motion to dismiss stage.  We're into summary judgment

25    stage which has a different standard, of course, because the

1   parties are submitting documents outside that would be pure

2   complaint.

3           MR. LIEBER:  Well, I think we are in the Rule 56

4   stage, Your Honor, and I don't think that there is a -- I

5   don't think there's an appropriate motion to dispose of these

6   cases on Rule 56.  I think we should be permitted to take

7   discovery to show that the control features are not baseless,

8   to get into the relationship between Michigan State and GRMEP.

9   And if you look, for example, Judge --

10          THE COURT:  How much time do you think you need to

11  do that?

12          MR. LIEBER:  I don't know.  Ninety days.  But what

13  I'd like to do if I could during the same period, because some

14  of it will overlap, is to start taking -- I mean, the case is

15  live with GRMEP.  There's no question.

16          THE COURT:  Why do you want the other parties in?

17  That's just a matter of curiosity more -- and if you don't

18  want to answer it, you don't have to.

19          MR. LIEBER:  Well, I can answer it.  There are ways

20  that it's very important to us.  I mean, the civil rights laws

21  contemplate reinstatement.  First, for one thing, if we are

22  going to have an equitable remedy here, it appears --

23          THE COURT:  I see.  That's a good answer, yeah.

24          MR. LIEBER:  All right.  Okay.  So that's very

25  important, and indeed one of the control features that's quite

1   important is that the hospitals have the right to approve of

2   the residents.  They have the right to make the residents

3   leave and to discipline them, such discipline to be

4   implemented by GRMEP.  If a resident doesn't satisfy the

5   hospital, either hospital, I believe this is Saint Mary's or

6   Spectrum, they can say, peremptorily without process, they can

7   say that the resident must leave, and that in fact is a

8   discharge.

9           THE COURT:  All right.  Listen, I'll tell you what

10  I'll do.

11          MR. LIEBER:  All right.

12          THE COURT:  I was prepared to make a decision today,

13  but hearing you and knowing that we're now receiving matters

14  outside of the record and you want to expand the record a bit,

15  I will grant -- I'll grant you your 90 days for discovery.  I

16  will not stop discovery.  I will set this motion aside.  I'll

17  just put it on the administrative docket.  That's just so the

18  Court of Appeals doesn't start writing me letters, why don't

19  you decide the motion, and we will give you 90 days of

20  discovery.

21          I think that, quite frankly, you have an uphill

22  battle.  But, you know, I will look at everything that you

23  give me and we'll see where we are in 90 days.  Someone write

24  a letter.  Ninety days is fine with me because I'm going to be

25  in Europe in June and then I hope up north in July and August,

1    so that will come in just about the right time.

2          Someone should write me a letter telling me -- I'll

3    put this in an order -- telling me that we've had our

4    discovery now.  I'm not going to limit you to discovery

5    regarding the employer-employee relationship and the notice

6    under Title IX, which I think is a difficult issue for you as

7    well.  I'll just leave everything for discovery for this 90

8    days and then people can flesh out their briefs and then I'll

9    decide it.

10          MR. LIEBER:  All right.  Now, this does not

11    include the discovery on the main case against GRMEP?  I'm

12    sure Your Honor has looked --

13          THE COURT:  No, you can do that too, right.

14          MR. LIEBER:  That's not limited to 90 days, though,

15    obviously?

16          THE COURT:  No, no, right.

17          MR. LIEBER:  All right.  But we can -- we'll begin

18    with our Rule 26 disclosures, and I would assume -- is that

19    triggered now?  Is this --

20          THE COURT:  No.  Do I have a joint status report in

21    yet, Phil?  There's not been a Rule 16.  All right.

22          MR. DREW:  There have not been answers filed yet, so

23    it probably hasn't triggered a Rule 16 yet.

24          MR. LIEBER:  Well, there has been an answer filed.

25          THE COURT:  Well, I'll allow, even though answers

1    haven't been filed, I'll allow discovery of GRMEP.

2           MR. LIEBER:  All right.  And that -- but there's no

3    discovery cutoff at this point?

4           THE COURT:  Not yet, but there soon will be.  After

5    that 90 days there will be discovery cutoff.

6           MR. LIEBER:  Fine.

7           THE COURT:  Unless you want to submit a joint status

8    report and then the regular Rule 16, but usually we don't do

9    that until we -- Phil, why don't we do that, and I'll do it by

10   phone so you don't have to come all the way over here again

11   unless you want to.  But we'll enter a joint status

12   requirement, a report.  Then we'll handle a Rule 16.  Mr. Drew

13   can tell you what that's all about, and we'll set then the

14   discovery cutoffs.

15          But I'll set an order now saying that the discovery

16   cutoff regarding the pending motions, the issues involved with

17   the pending motions will be 90 days from now.

18          MR. LIEBER:  Thank you, Your Honor.

19          THE COURT:  Okay.  Yeah.

20          MR. BRETZ:  May I, Your Honor?

21          THE COURT:  Sure.

22          MR. BRETZ:  The motions remain pending.  Will these

23   defendants need to file an answer?

24          THE COURT:  Well, good question.  Does the filing of

25   an answer bother you a whole lot?

1              MR. BRETZ:  Well --

2              THE COURT:  In other words, I don't want any

3     unintended consequences here.

4              MR. BRETZ:  Yeah.  Being involved in a case where

5     he's searching for a cause of action bothers my client, but

6     put that aside.  I would prefer to remain it as is.  If the

7     Court's going to hold in abeyance its ruling on our motions,

8     I'd prefer to leave it that way.

9              MR. LIEBER:  Well, as long as I can understand, Your

10    Honor, I don't have a problem with that, with not getting an

11    answer if this is really --

12             THE COURT:  You know what he's going to say.

13             MR. LIEBER:  If this is just simply on the motion,

14    but it does not preclude us, assuming that some of the causes

15    of actions remain, taking discovery on the merits after we see

16    who's still in the case and on what claims.

17             THE COURT:  Listen, my attitude about that is even

18    if they're out of the case, you're entitled to discovery from

19    them regarding certain aspects of this case.

20             I'll enter an order.  It will say there's discovery.

21    Discovery cutoff regarding the issues that are raised in this

22    motion which I will list will be 90 days from now.  I will not

23    have a cutoff for the other times, and I will -- there will be

24    no restriction on what discovery you can take so long -- other

25    than what's under the rules, and I might even put in there a

1    disclosure of documents regarding any documents under Rule

2    26(a) and all of that.

3            Are there going to be expert witnesses?

4            MR. LIEBER:  On this?  I -- at this time I don't

5    contemplate any.  I think it's a factual question, and that's

6    what --

7            THE COURT:  Well, I mean as far as the motion, it

8    might be.  But as far as, for example, you know, I would

9    assume, and I could be dead wrong about this, that there might

10   be expert opinions as to her qualifications --

11           MR. LIEBER:  Yes.

12           THE COURT:  -- as a resident and as a physician.

13           MR. LIEBER:  I assume that there will be, on the

14   case-in-chief, that there will be experts on certain

15   professional issues and on economic issues.

16           THE COURT:  All right.  My order will also put in

17   deadlines for those types of things, but it will be further

18   out than the 90 days.

19           MR. LIEBER:  All right, Your Honor.  Thank you.

20           MR. BRETZ:  One last question.

21           THE COURT:  Yeah.

22           MR. BRETZ:  The discovery requirements go both ways

23   during the 90 days?

24           THE COURT:  Yes, yes.  It will be wide-open

25   discovery.  All right.  That's what we'll do.  Okay.  Thanks,

1     counsel.

2              MR. LIEBER:   Thank you, Your Honor.

3              MR. BRETZ:   Thank you, Your Honor.

4              THE COURT:   I'll sit here and do the order right

5     now.   You can hang around and we'll, you know, negotiate it.

6              MR. LIEBER:   Thank you, Your Honor.

7              MS. LACHMAN:   Thank you, Your Honor.

8                  (Proceedings concluded at 11:46 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER


        I, Kevin W. Gaugier, Official Court Reporter for the

United States District Court for the Western District of

Michigan, appointed pursuant to the provisions of Title 28,

United States Code, Section 753, do hereby certify that the

foregoing is a true and correct transcript of the proceedings

had in the within-entitled and numbered cause on the date

hereinbefore set forth.

        I do further certify that the foregoing transcript

was prepared by me.




/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503